### EVANS-SNIDER-BUEL CO. v. W. R. HOLDER.

Delivered May 29, 1897.

**1. Agency—Collection of Money—Express Authority Vel Non.**

A banker who fills out in duplicate for the borrower blank mortgages and notes sent to him by the lender, for the amount of the loan, sending the original mortgage to the latter, together with a note executed by the borrower and indorsed by himself, and a draft drawn on him by the borrower in the banker's favor for the amount of the loan, which is honored by the lender if the loan is approved, is not an express agent to collect the note.

**2. Same—Same—Implied Authority Vel Non.**

A letter sent by a lender of money secured by a mortgage to the lender's agent for the solicitation of the loan, permitting the borrower to sell the mortgaged property, but requiring the net proceeds to be remitted to him at his residence, where it is to be placed to the credit of the borrower on account, does not authorize such agent to collect the amount of the debt.

APPEAL from Roberts. Tried below before Hon. B. M. BAKER.

*H. E. Hoover* and *Matlock, Cowan & Burney,* for appellant.—Where the plaintiff brings suit for an alleged balance due on a promissory note

and the defendant seeks to avoid liability solely on the ground that he has paid the amount claimed to a person alleged by him to be the agent of the plaintiff, with power to receive the money for it, and that payment to such person discharged the debt, the burden is on the defendant to show that he paid the money to the alleged agent as the agent of the principal, and that he had authority, as such, to receive it. McGregor v. Hudson, 30 S. W. Rep., 489; Pilcher v. Kirk, 60 Texas, 162.

*Browning & Madden* and *C. Coffee*, for appellee.—Contra: Mfg. Co. v. Crossland, 2 Willson, 80; Railway v. Ragsdale, 67 Texas, 26; Friedlander v. Cornell, 45 Texas, 588; Railway v. Jones, 82 Texas, 156; McAlpin v. Ziller, 17 Texas, 508; Merriman v. Fulton, 29 Texas, 98; Land Co. v. Watson, 21 S. W. Rep., 624; Hull v. Railway, 66 Texas, 621.

TARLTON, CHIEF JUSTICE.—On April 24, 1895, the appellee executed at Mobeetie, Texas, his promissory note for the sum of $892.50, payable 180 days after date, with interest at 10 per cent after maturity. The note was payable to the order and at the office of the plaintiff Evans-Snider-Buel Co., in Kansas City. It was secured by a chattel mortgage on certain cattle.

On April 14, 1896, the appellant, a corporation, brought this suit against the appellee, to recover the sum of $234.70, principal and interest, alleged to be the balance due on the aforesaid note. The trial resulted in a verdict and judgment for the defendant, approving the defense urged by him to the effect that he had paid the note (1) by a payment of $700 made by him on the 6th day of August, 1895, to John L. Dickerson, the duly authorized agent of appellant at Mobeetie, and (2) by a further payment of $231 made by him to Dickerson as such agent on the 16th day of October, 1895, in full discharge of the indebtedness.

We feel constrained to sustain the thirteenth assignment of error, complaining substantially of the court's action in overruling plaintiff's motion for a new trial on the ground that the evidence failed to establish the agency of Dickerson to receive money in discharge of the indebtedness. We are of opinion that the testimony disclosed by this record does not justify a legitimate or reasonable inference that Dickerson, to whom the payment was made, and who on October 16, 1895, executed a receipt to appellee for $231, for the account of Evans-Snider-Buel Co., was authorized to bind the latter by such action. To have this effect, Dickerson must have been authorized by the plaintiff to collect the note, either expressly or by implication.

1. Did he stand towards the plaintiff in the relation of express agency?

It appears that prior to the year 1895 Dickerson had been for several years engaged in the banking business at Mobeetie; that in March of that year he intered into correspondence with the plaintiff, engaged in the live stock business in Kansas City, Mo., which culminated in an understanding or an arrangement between them of the following nature: The plaintiff, in order to secure the control of business by way of selling

cattle, and thus realizing commissions in the live stock business, in which it was engaged, agreed to make small loans to the customers of Dickerson on their cattle. To this end it sent blank mortgages and notes to Dickerson, who filled them out in duplicate for the amount of the loan, sending the original mortgage to the plaintiff at Kansas City, together with the note executed by the borrower, Dickerson indorsing the note. On approval of the loan by the plaintiff, after inspection of the note and mortgage, the plaintiff would honor a draft drawn on it by the borrower for the amount of the loan in favor of Dickerson.

In this manner was the loan by the plaintiff to the defendant negotiated in this instance. In borrowing the money the defendant had no direct communication with the plaintiff. The note and the mortgage were prepared by Dickerson, and a draft for the amount was drawn through his bank upon the plaintiff.

We are of opinion that, looking alone to the method by which the money in this instance was borrowed by the defendant from the plaintiff, Dickerson could be regarded as at most but an agent to solicit loans. Hence it is manifest that Dickerson was in no sense the express agent of the appellant for the collection of the note, which he had indorsed and forwarded to the plaintiff, payable at Kansas City.

2. Was he the implied agent of the plaintiff for the collection of the note?

The fact of agency for the solicitation of a loan does not import the existence of such a relation for the collection of the debt. Mech. on Agency, sec. 372. However, circumstances may exist which would justify the inference of agency for the purpose of collecting the debt, and we proceed to consider the circumstances relied upon for that purpose by the appellee in this case.

In addition to the appellee, several customers of Dickerson seem to have employed a similar method of borrowing money from the plaintiff. Among these were H. B. Lovett and J. C. Short, whose testimony is relied upon by the defendant.

With reference to the payments made by him, the defendant testified as follows: "The first payment I made to the plaintiff on the note was made in this way: I had the money on deposit with Dickerson, and I just went in on the 8th day of August, 1895, and told him to send Evans-Snider-Buel Co. $700 and charge to my account. The last payment was made in the same way, only I took the money and gave it to Dickerson, and took his receipt. I did not take his receipt for the first payment. Dickerson sent the first money all right. He did not send the last. That is the reason I did not get my note. If Dickerson had sent the money to Evans-Snider-Buel Co., like he promised, I would have gotten my note. I paid the last payment to Dickerson on the 16th day of October, 1895, and I did not know but that he had sent it to the plaintiff and paid off the note, until the plaintiff wrote me in November after, about the 29th day. Up to that time I had not asked why I had not received my note."

In connection with this statement, Mr. Holder produced and read in

evidence a letter from the plaintiff to Dickerson, of date July 26, 1895, and reading as follows: "Noting yours of the 23d instant, in which you advise that J. E. Wilson and W. R. Holder are about to sell some of their cattle, to this sale we have no objections, provided the net proceeds of the sale are remitted to us here in Kansas City exchange, to go to their credit on account. We require from them the number of cattle sold, to whom sold, and the amount per head. Through you we grant this permission to any of those parties who have mortgaged their cattle through you to us."

We fail to note in this testimony any basis for a reasonable inference that Dickerson was authorized to collect the note in question, and thus bind the appellant. The permission granted in the letter was but a permission to sell the mortgaged property in Texas, and closely guarding the rights of the appellant by requiring that the net proceeds should be remitted to it at Kansas City and in Kansas City exchange, to be placed there—and not at Mobeetie—to the credit of the account of the defendant.

The remaining circumstances relied upon consist in transactions with the other parties, Messrs. Lovett and Short, the former testifying: "On October 15th I shipped a lot of cattle to plaintiff at Kansas City, Mo., which amounted to the sum of $265.58, which I directed them to place to my credit on my note and mortgage, which they did. I went with the cattle myself, and went into the office of the plaintiff and told the man in the office, Mr. Vance, that I did not expect to ship out any more cattle that year, and that I would pay the balance due on my note and mortgage through Dickerson, and he told me that would be all right and satisfactory with the company, and I afterwards paid the balance due on my note and mortgage to the said Dickerson, and I paid it to him as the agent of the plaintiff, and he gave me a receipt for it. * * * I knew at the time I made the payment to Dickerson on my note that he did not have the note, and that it was in possession of the plaintiff at Kansas City, and I thought Dickerson would send the money to them."

With reference to this transaction with Mr. Lovett, the plaintiff on October 16th wrote Dickerson as follows: " * * * Also have to advise you that H. B. Lovett was here with twenty-two head of cattle, which net $265.58, which amount we placed to his credit on account, and will apply on his note of $446.50, which will mature December 1st, on which you are indorser. Judging from Mr. Lovett's conversation, it is not his intention to ship the balance of his cattle, as he remarked that he would adjust the balance due on his note through you. This will leave $181.02 on the note and $14 commission on twenty-eight cattle, due us under the mortgage, making a total of $195.02. Kindly be advised of this amount, in case he wants to make settlement of the note."

We regard this agreement with Mr. Lovett and these instructions to Mr. Dickerson as but an agreement authorizing Mr. Lovett to sell his cattle in Texas and to make remittance of the proceeds through Dickerson, the banker, to the plaintiff, the custodian of the note and mortgage affording Dickerson the data whereby the exact amount of the remittance could be determined. We do not regard the conduct of the appellant as

indicating an authority to Dickerson to collect the money due it, in the absence of the note which was the evidence of the indebtedness.

The testimony of Mr. Short as to the transactions with him adds no strength to the appellee's contention. It seems that he paid off his note and mortgage to Dickerson, taking a receipt from the latter as the agent of the plaintiff, but it is manifest that this act and declaration of Dickerson could not of itself create the relation of agency for the collection of the note. Mr. Short testifies that the plaintiff never at any time told him that Dickerson was its agent for any purpose, or instructed him to pay the money due on his note and mortgage to Dickerson; that he knew at the time he paid the money to Dickerson that his note was not in his possession, and that it was payable to the plaintiff at the office of the Evans-Snider-Buel Company at Kansas City, Mo.

The evidence does not justify the inference that the plaintiff placed Dickerson in such a position as to reasonably lead others to believe that he was authorized to collect the notes payable to it at its office and held in its custody. To imply in Dickerson an authority to collect the note in question, from the circumstances disclosed by this record, would be to extend that authority beyond "the necessary and legitimate effect of the facts from which" such inference is sought. Implied as well as expressed authority "must find its source in the intention of the principal." All the facts here disclosed are wholly consistent with the intention and the condition to which the appellant's agent testified, that Dickerson was wholly without authority to collect notes and execute receipts for payments in its name. Mech. on Agency, sec. 274.

The following language of the Supreme Court of Illinois in Cooley v. Willard, 34 Illinois, 74, seems to be pertinent in this connection: "Appellant having intrusted Woodward with the money, if designed as a payment, he should have looked to his authority before he gave him the money; and if he had no such authority, the risk was his and not appellee's. Had he called for and insisted upon the production of the note, he would have learned that it was not in Woodward's possession, which would have been sufficient to put him upon his guard. It is a familiar rule, that where one of two innocent persons must suffer loss through the wrong of another, the party who enabled the person to commit the wrong must stand the injury. In this case appellant enabled Woodward to appropriate this money to his own use, and failed to see whether he was authorized to receive it, and must therefore submit to the loss."

Hence it is ordered that the judgment be reversed and the cause be remanded.

*Reversed and remanded.*