PETER N. CAMPBELL, Respondent, v. HUGH S. GOW-
ANS and BETSY GOWANS, Appellants, and S. B.
MILNER, Trustee, Defendant.

No. 1950.   Decided January 2, 1909 (100 Pac. 397).

1. Principal and Agent—Authority—Ratification.  A subse-
quent ratification of an agent's acts is equivalent to a prior
command.  (Page 276.)

2. Principal and Agent—Agency—Sufficiency of Evidence.  In
an action to foreclose a trust deed, evidence *held* to show that
the agent, in negotiating the loan and collecting the interest
and principal, was acting as the agent of the mortgagee and not
as agent of the mortgagor.  (Page 276.)

3. Principal and Agent—Authority of Agent—Receiving Pay-
ment—Burden of Proof.  A mortgagor paying the principal to
an agent of the mortgagee, in the absence of the note and mort-
gage, has the burden of showing that the agent had authority
to receive the principal.  (Page 277.)

4. Principal and Agent—Authority of Agent—Receiving Pay-
ment—Evidence.  That a note and mortgage are not in the
hands of an agent of the mortgagee when the agent collects
the principal is not conclusive on the question of authority to
receive the principal, but is a matter of evidence, to be weighed
in connection with all the facts.  (Page 278.)

5. Appeal and Error—Review—Findings in Equity Suit—Con-
flicting Evidence.  Findings of the trial court in an equity
suit on conflicting evidence do not necessarily require the ap-
proval of the appellate court, especially where the evidence is
by deposition, since, under the Constitution, it is the duty of
the appellate court in equity cases to determine whether the
findings were called for by the evidence adduced.  (Page 280.)

6. Principal and Agent—Authority of Agent—Receiving Pay-
ment—Sufficiency of Evidence.  In an action to foreclose a
trust deed, in which it was shown that the mortgagee's agent,
to whom the principal was paid when he was not in possession
of the note and mortgage, absconded, evidence *held* to show that
the agent had apparent or ostensible authority to receive the
principal, though the mortgagee had possession of the securities.
(Page 283.)

7. PRINCIPAL AND AGENT—AUTHORITY—ESTOPPEL TO DENY.  Where a mortgagee knows that his agent in collecting interest on a note and mortgage is lax and may be dishonest, and does not repudiate the agency, the fact that the principal is paid to an absconding agent, in the absence of the security, will not defeat the payment, as the mortgagee will be estopped under the maxim that, if one of two innocent persons must suffer by the acts of a third, he who has enabled the third person to occasion the loss must sustain it.   (Page 284.)

8. EVIDENCE—PRESUMPTIONS—MAILING LETTERS.  The mailing of a letter postpaid, and properly addressed to a person shown to reside in a city or town to which the letter was addressed, creates no legal presumption, but a presumption or inference of fact, that it reached its destination.   (Page 284.)

APPEAL from Third District Court, Salt Lake County.— *Hon. Geo. G. Armstrong,* Judge.

Action to foreclose a deed of trust.   From a judgment for plaintiff, the defendants appealed.

REVERSED AND REMANDED with directions.

*Messrs. Richards, Richards & Ferry* for appellants.

*Messrs. Booth, Lee & Badger*  for respondent.

RESPONDENT'S AUTHORITIES.

"Where a mortgagor pays the amount of the debt to one whom he knows has not possession of the papers and who undertakes merely to procure a release from the mortgagee, the mortgagor assumes the risk of the release being procured in that manner."   *Lane v. Duchae,* 73 Wis. 646, 41 N. W. 962.

"No authority can be inferred merely from the fact that the money was borrowed from the holder of the note through a firm of brokers, of which the trustee was a member, and that payments of interest on the note had been made to him before."   *(Stiger v. Bent,* 111 Ill. 330; *Insurance Co. v. Eld-*

*ridge,* 102 U. S. 545.) Possession indispensable by agent of securities to authorize him to collect. Jones on Mortgage, sec. 964. Burden of proof on debtor to show agent had possession of note when payment was made. (*Stiger v. Bent,* 111 Ill. 328; *Eaton v. Knowles,* 61 Mich. —; *Williams v. Walker,* 2 Sandf. Ch. N. Y. 325; *Smith v. Kidd,* 68 N. Y. 130; *Garrels v. Morton,* 26 Ill. App. 433.) While the authority of an agent to receive payments may be inferred from his having made the loan and retained the securities, this inference fails when the notes are withdrawn from his possession. (*Garrels v. Morton,* 26 Ill. App. ——; *Lane v. Duchae,* 75 Wis. 646; *Roberts v. Matthews,* 1 Vern. 150; *Westenholm v. Davies,* Freem. Ch. D., 298; *Hooles v. Frick,* 75 Ga. 715.) The payment of an indebtedness, in order to operate as a discharge of the indebtedness, must, of course, be made to the creditor or to a person authorized by the creditor to receive it. (22 A. and E. Ency. Law (2nd Ed.), 518, and note 3.) And the fact that the party to whom the payment was made claimed to be the agent of the creditor is of no avail to the debtor where such person was not authorized to receive payment. (22 A. and E. Ency. Law (2nd Ed.), 518, and note 4.) Payment to an agent upon whom the creditor has conferred ostensible authority to receive it is as effective as though the agent had actual authority. "Payment to an agent who has neither possession of the securities nor express authority to receive the payment, is not good." (*Smith v. Kidd,* 68 N. Y. 130, 23 Am. Rep. 157; *Dickson v. Wright,* 59 Miss. 585, 24 Am. Rep. 677; *Knife Co. v. Bank,* 41 Conn. 421, 19 Rep. 517; *Doubleday v. Kress,* 50 N. Y. 410, 10 Am. 502; *Curtain v. Ins. Co.,* 78 Cal. 619.) "Payment to an agent is binding upon the principal only to the extent of the agent's authority to receive payment." (*Martin v. United States,* 2 T. B. Monroe 89, 15 Am. Rep. 129, and note.) "A mortgagor who makes a payment to one, other than the mortgagee, does so at his peril. If the payment be denied upon him rests the burden of proving that it was paid to one clothed with authority to receive it. There is, however, one excep-

tion to this general rule. If payment be made to one having apparent authority to receive the money, it will be treated as though actual authority had been given for its receipt." Bailey on Agency (3 Ed.), 275; Story on Agency, sec. 98; *Williams v. Waller,* 2 Sandf. Ch. 325; *Smith v. Kidd,* 68 N. Y. 130, 23 Am. Rep. 157; *Brewster v. Karnes,* 103 N. Y. 564. The mere possession by an agent of evidences of indebtedness or securities does not confer upon him ostensible power to receive payment thereof. 22 Am. and Eng. Enc. of Law, p. 520; *Lawson v. Nicholson,* 52 N. J. Eq. 821; *Trust Co. v. Folsom,* 26 N. Y. App. Div. 40; *Brown v. Taylor,* 32 Gratt. (Va.) 135.

STRAUP, J.

This action is brought by the plaintiff to foreclose a deed of trust on real property, executed and delivered by the defendants Hugh S. and Betsy Gowans to secure their promissory note of even date, payable to the plaintiff. The defendant S. B. Milner, a resident of Salt Lake City, was named the trustee in the deed. The answer of the Gowanses contained a plea of payment, and a demand for the surrender and cancellation of the note and deed.

The note was for $500, dated July 1896, and was payable July 1898 at the National Bank of the Republic, at Salt Lake City. The facts are substantially as follows: The Gowanses, who resided in Tooele county, applied to Porter J. Conway, who was in the real estate and loan business at Salt Lake City, for a loan of $500. Conway, who was acquainted with the plaintiff, wrote him in New York, where the plaintiff resided, that the Gowanses desired a loan, and that, in his opinion, the loan would be good. The plaintiff wrote him that he would make the loan if Milner approved it. The plaintiff testified Milner represented him at Salt Lake City, and that he had, at various times, loaned a great deal of money for him in that vicinity. Milner approved the loan. The plaintiff sent a New York draft for the sum of $500, payable to himself and indorsed

by him to Milner. Milner paid Conway the sum of $500, either in cash or by Milner's individual check. The money was paid by Conway to the Gowanses, either in cash or by Conway's own check. The note and trust deed were executed by the Gowanses and delivered to Conway. After the deed was recorded, Conway delivered the deed and note to Milner, who sent them to the plaintiff. All the transactions had with the Gowanses with respect to the negotiation of the loan, and the execution and delivery of the note and deed, were had with Conway. None of them were had directly with plaintiff or with Milner. When the interest coupons became due, the plaintiff sent them to Milner. Milner delivered them to Conway, who collected the interest from the Gowanses. All the interest paid by them was paid to Conway. When received by him he paid it to Milner. Milner forwarded it to the plaintiff. In December 1896, the plaintiff wrote Milner: "I have written Conway that I have sent the Gowans' coupons to you." In remitting interest to the plaintiff, Milner stated: "Paid by P. J. Conway Gowans' interest coupon, $25.00." At one time he wrote plaintiff: "Conway paid me the Gowans interest yesterday. It seems his clerk had got in on January 13th and had used it. When I wrote him (Gowans) that suit would be brought at once he sent me a check and the receipt." In January 1897, Milner wrote the plaintiff inclosing interest money which Conway had collected on the Gowans' note, and on a Mrs. Cherishino's note, also due the plaintiff: "I do not want to injure anyone wrongfully and my suspicions may be without foundation, but I would advise you to be careful of Conway and not trust him too far." Conway collected interest from other persons to whom plaintiff had made loans, and paid it over to Milner. In referring to one of them Milner wrote plaintiff: "Conway claims he sent you the interest money he had collected from Adonis. I made him give me a guarantee to pay it if he had not paid you." At another time he wrote: "I also enclose Conway's letter and agreement to pay your Adonis interest

—if you have not already got it." At still another time he wrote plaintiff: "I saw Conway today. He says he has some interest paid by Gowans, Adonis, or some one he forgets which, that belongs to you. He said he would bring it in today but he has not done so." Plaintiff himself testified that on one occasion when he was in Salt Lake City he met Conway on the street, who told him that he. had $30 interest money received by him from Gowans, and that Conway then paid it over to him. Plaintiff also testified that he had received letters from Conway and that he had written letters to him. When asked to produce the letters received by him and copies of those written by him to Conway, he testified that he did not keep either. He admitted receiving the letters from Milner, and that he replied to them, but stated that he also kept no copies of those letters. Milner testified that he received letters from the plaintiff in reply to the letters written by him, but that he was able to find only one of them. The plaintiff, however, testified that after the Gowanses were behind on their interest due January 13, 1899, he wrote Conway several letters, saying, "Please have Gowans pay interest." He, however, testified that he wrote these letters "considering and believing that Conway was the agent or representative of the defendants, Gowans, in the matter of my loan to them." The interest was thereafter paid by the Gowanses to Conway as theretofore, which was by him paid over to Milner and by him forwarded to plaintiff. On July 12th, 1899, the Gowanses paid Conway $325, principal and interest, and on September 15th, 1899, they paid him the further sum of $203, principal and interest, being payment in full of the principal and interest on the note. Conway failed to pay these moneys over to either Milner or plaintiff. He absconded after he received them, and has not been heard of since. One of the defendants testified that when he made the last payment he asked Conway for the note and mortgage and for a release; that Conway told him that the note and mortgage were in the possession of Mr. Campbell in New York, and that Mr. Campbell was

indisposed and sick and had gone south. He further testified that he knew Campbell did not live in Utah, that he resided in New York, and that Conway had to send east to get the note and mortgage and a release; and that, believing and expecting everything would be all right, he paid the money.

With respect to the foregoing facts there is substantially no conflict. Milner, however, testified that some time prior to July, 1899, and before the first payment of principal was made to Conway, he wrote a letter to both of the Gowanses addressed to them at Tooele city, notifying them that he was the trustee, and that he represented the plaintiff and had charge of his affairs, and that they should pay all moneys to him and not to Conway; that the letter was postpaid, and mailed in due course of business. Both the Gowanses testified that they lived in Tooele city for something like fifty years, and that they were well known to the postmaster and to the people generally in Tooele city, and that no such letter was received by them as testified to by Milner. They further testified that the only letter received by them from Milner was a letter dated December 17th, 1900, which notified them that the note and interest were past due, and requested them to call and arrange for further time or to pay the note; that when they received the letter they had paid the note in full to Conway, and that in response to the letter they came to Salt Lake City and showed it to one of their attorneys in this case. Further testimony was given by the plaintiff that he at no time had authorized Conway to represent him in negotiating the loan or in collecting the interest, or in receiving payment of moneys for him for any purpose, and that Milner alone represented him in all the transactions in which he and the Gowanses were interested. He further testified that Conway was the agent of the Gowanses in negotiating the loan and in collecting the interest, but such testimony seems to be a voluntary statement made by the plaintiff, not responsive to any question propounded to him, and was the mere conclusion of the witness.

The court found that Conway was not at any time the

agent of the plaintiff; that he did not represent him in any of the dealings or transactions had by Conway with the Gowanses; and that Conway, in the negotiation of the loan and the payment of moneys made by the Gowanses to him, was the agent of the Gowanses. The court further found that Conway was not authorized by the plaintiff to receive payments of the sums of money paid to him on the principal; that the Gowanses had no right or authority to pay such money to Conway for the plaintiff; that at the time the Gowanses paid such money to Conway they knew that the note and mortgage were not in the possession of Conway, but were in the possession of the plaintiff, and that Conway would have to send east for them, and also for a release; and that in the making of such payments Conway was their agent, and not the agent of the plaintiff.

Upon such findings the court rendered a judgment in favor of plaintiff and against the defendants, ordering a sale of the property, and providing for a deficiency judgment. Upon appeal the defendants contend that the findings are not supported by the evidence.

We are very clearly of the opinion that the findings which the court made that Conway was the agent of the defendants, and that he in no particular was the agent of the plaintiff, and did not represent him in any of the transactions referred to, is against the clear weight of the evidence. That Conway was not the agent of the defendants, and that he was some sort of an agent for the plaintiff and represented him in some of the matters, we think is very clearly established by the evidence. True, there is no evidence to show that the plaintiff had given him any express or direct authority to negotiate the loan or to collect the interest, or to receive payment of any moneys from the Gowanses. In fact, there is affirmative evidence to show that no such direct or express authority was given Conway by the plaintiff. But the question still remains, did the Gowanses, from plaintiff's conduct in the premises, and from Conway's participation in the transactions, with the knowledge and apparent acquies-

cence of the plaintiff, have the right to presume that Conway had the apparent or ostensible authority to represent the plaintiff and to receive moneys for him? So far as pertains to the negotiation of the loan, it appears all that Milner had to do with it was to approve the loan. The matter of negotiating and consummating the loan, attending to the execution and delivery of the note and deed, and paying over the moneys of the loan to the Gowanses, were all conducted by Conway. As a result of such transactions on the part of Conway, the plaintiff received and accepted the note and deed, and recognized the transactions so had and concluded by him, and to that extent ratified the acts of Conway. The natural inference to be drawn from the evidence is that the coupons were delivered to Conway for collection, and that all the interest payments were made to him, presumably when he had the coupons in his possession. The undisputed evidence shows that the plaintiff had knowledge that Conway collected the interest of the Gowanses, and that it was paid over to Milner by him. The plaintiff having knowledge of such fact, and of the manner in which Conway collected the interest, and by plaintiff's receiving and accepting it, and in no manner repudiating the acts of Conway; it justifies a finding that his acts in those particulars were also ratified by the plaintiff. It is a general rule that a subsequent ratification has a retrospective effect and is equivalent to a prior command. We think it is quite clearly established that Conway had the apparent or ostensible authority to represent the plaintiff in the negotiation of the loan and in receiving the interest payments. The judgment of the court below can, therefore, not stand on the findings made that Conway was the defendants' agent, and not plaintiff's agent, in any particular and for no purpose.

The difficult question, however, in the case is, does the evidence show that Conway had authority to receive payments of the principal for the plaintiff? The burden was on the Gowanses to prove that Conway had either express

or apparent authority to receive the payments in question for the plaintiff. There is again no proof to show that he had direct or express authority to receive payments of the principal. The question then is, have the defendants sustained the burden of proof that Conway had such an apparent or ostensible authority as to reasonably induce them to believe that he was authorized to receive payments of the principal? Counsel for respondent invoke the rule that a payment of the principal, in part or. in full, to an alleged or an assumed agent who has not the possession of the securities at the time of the payment, nor express or special authority to receive the payments, is not binding on the creditor. There is no doubt that a number of cases so hold.

The rule in that regard as stated in 1 Jones on Mortgages (5th Ed.), sec. 964, is as follows:

"Even authority to collect the interest upon a mortgage does not afford ground for inferring authority to collect the principal, where the agent is not intrusted with the possession of the securities. The mortgagor is bound to know the extent of the agent's authority. If he pays the principal to an agent, he must be prepared to prove express authority. He pays to an agent at his peril. The rule has been strictly adhered to in all the adjudged cases that the possession of the securities by the agent is the indispensable evidence of his authority to collect the principal."

In the case of *Eaton v. Knowles,* 61 Mich. 625, 28 N. W. 740, it is said:

"The rule is well settled that, when a person makes payment upon negotiable securities to a person assuming to act as agent, he should see to it that the securities are in the possession of the person claiming to be agent; otherwise he may be compelled to pay the same again, unless he can show that the money was actually paid over to the principal or that the agent was specially authorized to receive payment."

In the case of *Garrels v. Morton,* 26 Ill. App. 433, the following language is used:

"The collection of other securities, or even a part of the existing debt, is not sufficient to raise an implied authority in the agent to receive payment. Express authority to collect interest is not sufficient to authorize the collection of the principal. The rule has been strictly adhered to in all the adjudged cases that the possession of the securities by the agent is the indispensable evidence of his authority to collect the principal."

The following, among other cases which might be cited, also support this doctrine: *Smith v. Kidd*, 68 N. Y. 136, 23 Am. Rep. 157; *Lawson v. Nicholson*, 52 N. J. Eq. 821, 31 Atl. 386; *Lane v. Duchac*, 73 Wis. 646, 401 N. W. 962; *Western Security Co. v. Douglass*, 14 Wash. 215, 44 Pac. 257; *Crane v. Gruenewald*, 120 N. Y. 274, 24 N. E. 456, 17 Am. St. Rep. 643.

These cases all proceed on the theory that an apparent or an ostensible authority cannot be inferred of one, assuming to act as the agent of another in receiving payments of the principal, who has not, at the time of the making of such payment, the securities in his possession and who has not direct or special authority for so acting. That is to say, in order to imply such authority, in the absence of proof of direct or special authority, it is held by these cases that two things are essential and indispensable: (1) Possession of the securities by the supposed agent, with the consent of the mortgagee at the time of the payment; and (2) knowledge of such possession on the part of the mortgagor or debtor at the time of the making of the payment.

On the contrary, there are cases supporting the rule that the fact that the note and mortgage were not in the possession of the supposed agent when he collected the principal is not conclusive of the questions of agency and authority, but is a matter of evidence, to be weighed and considered in connection with all the facts and circumstances in evidence. (*Thomson v. Shelton*, 49 Neb. 644, 68 N. W. 1055; *Phoenix Ins. Co. v. Walter*, 51 Neb. 182, 70 N. W. 938; *Harrison v. Legore*, 109 Iowa, 618, 80 N. W. 670; *Quinn v. Dresbach*, 75 Cal. 159, 16 Pac. 762, 7 Am. St. Rep. 138; *Morgan v. Neal*, 7 Idaho, 629, 65 Pac. 66, 97

Am. St. Rep. 264; *Fowle v. Outcalt,* 64 Kan. 352, 67 Pac. 889; *Reid v. Kellogg,* 8 S. D. 596, 67 N. W. 687.)

In all these cases a finding of apparent or ostensible authority of the alleged agent to collect and receive payment of the principal was upheld, notwithstanding the fact that the assumed agent did not have in his possession the note or mortgage at the time of the making of the payment. Of course, in these cases it was held that there were other sufficient facts and circumstances shown to justify the presumption of such apparent authority of the assumed agent. We believe these cases state the better rule. They proceed on the theory, not that some one particular fact, such as the failure of the assumed agent to have possession of the securities, is determinative or conclusive of the question of agency and authority, but on the broader doctrine, well stated in *Johnston v. Investment Company,* 46 Neb. 480, 64 N. W. 1100, that "where a principal has, by his voluntary act, placed an agent in such a situation that a person of ordinary prudence, conversant with business usages and the nature of the particular business, is justified in presuming that such agent has authority to perform on behalf of his principal, a particular act, such particular act having been performed, the principal is estopped as against such innocent third person, from denying the agent's authority to perform it."

It, however, is said that the ruling in the case of *Quinn v. Dresbach, supra,* was based on a statute which provided that "ostensible authority is such as a principal, intentionally or by want of ordinary care, causes or allows a third person to believe the agent to possess." But, as there observed by the court in that case, "this is the embodiment of a well-established principle of the common law, which has been called 'the foundation of the law of agency.'" The principle invoked in these cases, and as expressed in some of them, is but the application of the maxim declared many years ago by Mr. Justice Ashhurst, in the case of *Frith v. Leroux,* 2 T. R. 70 (2 D. & E. 23), that "we may lay it down as a broad general principle that, wherever one of two innocent

persons must suffer by the acts of a third, he who has enabled such third person to occasion the loss must sustain it." The fact, therefore, that Conway did not have the securities in his possession at the time when the Gowanses paid the principal to him, which was then well known to them, is not to be regarded as conclusive of the question of Conway's agency, or of his ostensible authority, but is, as matter of evidence, to be considered with all the other facts and circumstances in the case. The fact that an alleged agent did not have in his possession the securities at the time the debtor paid the principal to him is, as matter of evidence, entitled to great weight. And we think it may be said, generally, that such fact, when considered as evidence, may be alone sufficient to require a finding that an agent, though he has express authority to negotiate the loan and collect the interest, and thereunder performs such acts, nevertheless has not the ostensible authority to collect or receive any part of the principal, and that the debtor has not the right reasonably to presume that he had such authority. To the contrary, there may be instances where the agent has express authority to collect the interest and has possession of the securities with the consent of the creditor, and the fact of such possession known to the debtor when he pays the principal to such agent, but where, nevertheless, the debtor, because of other facts and circumstances, may not be justified in presuming that such agent had ostensible authority to collect and receive the principal, or any part of it. If this were a law case and the court or jury, from all the evidence here shown, had found either way on the question of Conway's apparent or ostensible agency and authority to receive and collect the moneys here in question, we would not feel justified in disturbing the finding or verdict on the ground of insufficiency of evidence to support it. But this being a case in equity brought here on an appeal on questions of both law and fact, it is our duty, under the Constitution, to determine not whether there is sufficient evidence in the record to support the findings, but whether the findings,

as made, are such as were called for by the evidence adduced. True, in the case of *McKay v. Farr*, 15 Utah 261, 49 Pac. 649, it was decided shortly after the adoption of the Constitution that "while this court had the power under the Constitution to review the facts in an equity case, still when such cases have been regularly tried before a court of chancery, and facts found on all material issues, we will not disturb such findings unless they are so manifestly erroneous as to demonstrate some oversight or mistake which materially affects the substantial rights of the appellant." In support of this rule, cases from the territorial Supreme Court are cited which were decided long prior to the adoption of the Constitution. The court evidently was mindful of the maxim that "the practice of the court is the law of the court," regardless of the Constitution; that, since it was the practice of the territorial Supreme Court before the Constitution to so regard the facts in an equity case, the state Supreme Court would continue to do so notwithstanding the Constitution, which conferred not only the power, but also imposed the duty on the court, in an equity case, to review the facts as well as the law. The rule thus announced, in effect, amounted to the exercise of no greater or different power in an equity case than was exercised in a law case. This rule was substantially departed from in the case of *Wilson v. Cunningham*, 24 Utah 167, 67 Pac. 118, where, although the court repeated the language above quoted, it nevertheless said: "We do not wish to be understood, however, that we are concluded by the findings of the trial court" though there be a conflict in the evidence. "We do not mean that we have abdicated our supervision and control over facts in equity cases. . . . When the testimony preponderates on one side or the other in such a way as to convince this court that the court below has erred, its judgment will be reversed." The court there, however, further observed that when there is a great or irreconcilable conflict in the testimony, or where it is evenly balanced, the findings which the trial court made will ordinarily be sanctioned by this court

by an affirmance. When there is a substantial conflict in the evidence upon which a finding of fact has been made by the trial court, in our review of the facts to determine whether the finding made was such as was called for by the evidence, proper consideration must be given of the trial court's opportunity to observe the conduct and demeanor of the witnesses in giving their testimony, to test their faculty of memory, and their intelligence and capacity to understand and comprehend the things testified to by them, and to observe other things which may affect the weight of the testimony and the credibility of the witnesses. But it does not follow that a finding made by the trial court, in an equity case, on a conflict in the evidence, necessarily requires our approval. The parties on appeal are entitled to our judgment on the facts, and it is our duty to give it. In the case in hand all the testimony of the witnesses was given by deposition. The trial court's opportunity to pass on the weight of the testimony and the credibility of the witnesses was, therefore, no better than ours. Furthermore, the finding made by the trial court that Conway was not authorized to receive the moneys in question for the plaintiff was based on the findings that Conway was defendants', and not the plaintiff's, agent. In this regard the court found "that Porter J. Conway was not at any time the duly authorized or credited agent or representative of the plaintiff, and therefore was not authorized to act and did not act as the agent of the plaintiff, and that the payments made by the said defendants to said Conway were made voluntarily, and without authorization from plaintiff."

On the question whether the defendants were justified in believing that Conway had the apparent or ostensible authority to receive such payments for the plaintiff, and whether the plaintiff, by his acts and conduct in the premises, held Conway out in such manner as reasonably to induce the defendants to believe that Conway had such apparent or ostensible authority, the very thing upon which the court ought to have made a finding, it made no finding, unless it

shall be said that from the fact that Conway did not have the possession of the securities it must be conclusively presumed as matter of law that he had no apparent or ostensible authority to receive payments of the principal for the plaintiff. But we have held no such conclusive presumption of law can properly be indulged. Treating the fact that Conway did not have the possession of the securities as matter of evidence, giving it due weight, and considering it in connection with all the other facts and circumstances in evidence, we are of the opinion, on the facts, that the defendants were justified in believing that Conway had the apparent or ostensible authority to receive the moneys in question for the plaintiff. In reaching this conclusion, we are influenced by the facts that, though the plaintiff had not given Conway express authority to act for him in the transactions referred to, he, nevertheless, had knowledge that Conway acted for him in the negotiation of the loan and in the collection of interest, and that the plaintiff ought reasonably to have expected that the defendants might well believe that Conway had the authority to do these things; that the plaintiff was notified that Conway was negligent and had failed to account with reasonable promptness for the moneys collected by him for the plaintiff, not only on account of the Gowans note, but also for moneys collected by him for the plaintiff from others, and that the plaintiff was warned not to trust Conway too far; and that notwithstanding the plaintiff's knowledge that Conway was collecting money for him from the Gowanses, and that he failed to promptly account for it, nevertheless the evidence, without conflict, shows that the plaintiff remained silent and continued to permit Conway to participate in the transactions and to collect moneys for him without objection. The plaintiff, having received information of Conway's derelictions, ought to have taken some action in the premises, and should not have acquiesced in Conway's continuing to collect money for him. When the plaintiff, thus knowing of Conway's remissness, permitted him to act for him in these matters without objec-

tion, he ought not now be heard to complain. We think, under the circumstances, the principle that "when one of two innocent persons must suffer by the acts of a third, he who has enabled such third person to occasion the loss must sustain it," should be applied. In reaching this conclusion, we are also not unmindful that Milner, a witness for the plaintiff, testified that he wrote and mailed a letter to the Gowanses, requesting them not to pay Conway, but to pay the witness, as he was plaintiff's agent. He testified that he did not keep a copy of the letter, and testified several times that he could not fix the date when he wrote and mailed it, but finally answered "Yes" to a leading question propounded to him by plaintiff's counsel, if it was not prior to July 12, 1899, the time when the Gowanses made the first payment on the principal. The mailing of a letter postpaid and properly addressed to a person shown to reside in a city or town to which the letter was addressed creates no legal presumption, but a presumption or inference of fact, that it reached its destination. (1 Elliott, Ev., sec. 107.) The testimony of the witness Milner is therefore some evidence that the letter testified to by him was received by the Gowanses in the due course of mail. The defendants, however, testified that no such letter as testified to by Milner was received by them. On such question we think the evidence preponderates in favor of the defendants, and it is not reasonable to presume that they, after receiving such information, would have paid any part of the principal to Conway.

We are therefore of the opinion that the judgment of the court below ought to be reversed and the cause remanded, with directions to vacate the judgment entered in favor of the plaintiff, and to enter a judgment in favor of the defendants Hugh S. and Betsy Gowans, requiring the plaintiff to surrender and cancel the note and trust deed, and to satisfy the same of record, and to surrender and transfer the certificate of water right mentioned in the pleadings, and

which also had been transferred to plaintiff by the Gowanses, as security for the debt. Costs to appellants.

It is so ordered.

McCARTY, C. J., and FRICK, J., concur.