## UNION CENT. LIFE INS. CO. v. BREWER.

### No. 1110.

Court of Civil Appeals of Texas. Eastland.
May 12, 1933.

Rehearing Denied June 9, 1933.

Scott W. Key, of Eastland, for appellant.

Scott, Brelsford, McCarty & Brelsford, of Eastland, for appellee.

LESLIE, Justice.

Originally this was a suit by J. E. Brewer against the Union Central Life Insurance Company and Scott W. Key, substitute trustee, to restrain the sale of a 113-acre tract of land under the terms of a deed of trust securing a loan also evidenced by a note due January 1, 1926, and made by the company to J. W. Clark, who thereafter sold the land to Brewer, who as a part consideration therefor assumed the indebtedness to the company. A temporary injunction was granted on the allegation and affidavit to the effect that the indebtedness had been paid in full by Brewer. The company replied by general denial and cross-action on the alleged unpaid balance of the original indebtedness. Sale under the deed of trust was abandoned and a judgment of foreclosure sought. Brewer filed supplemental petition, more specifically setting up payment to one J. G. Bishop, alleged to be the agent of the company, with authority to receive and collect the debt, and in the alternative, if not such duly authorized agent, that the company had, by its acts, made said Bishop its apparent and ostensible agent to so collect and receive the balance due on said note, and was therefore estopped to deny his authority to make the collection.

The trial was before the court without a jury, and at its conclusion judgment was rendered perpetuating the injunction and refusing any relief upon the cross-action.

Appellant attacks the correctness of the judgment by nine propositions based on fifteen assignments of error. These propositions will be grouped and considered together, since they in effect raise but two questions: (1) Was J. G. Bishop, to whom the balance of the note was paid, and who misappropriated the same, the duly authorized agent of the Life Insurance Company to receive and collect the money so paid him by Brewer? (2) If not, had the company, at the time and prior thereto, by its acts, dealings, and conduct, led said Brewer to believe said Bishop had such authority? That is, had Bishop apparent authority to make the collection?

It is deemed unnecessary to devote any great amount of space to a consideration of the first question. This for two reasons: (1) The counsel for the appellee, in presenting the case on submission, stated that no reliance was made on the theory of actual authority; and (2) we discover no testimony tending to establish such authority.

■ For the alleged apparent authority we now examine the testimony, bearing in mind the rule stated in an early Texas case to the effect that "when one, by his words or conduct, wilfully causes another to believe the existence of a certain state of things, and induces him to act on that belief, so as to alter his own previous position, the former is concluded from averring, against the latter, a different state of things, as existing at the same time." Love v. Barber, 17 Tex. 312; Wortham v. Thompson, 81 Tex. 348, 16 S. W. 1059; Green v. Priddy, 112 Tex. 567, 250 S. W. 656, 662; 2 Tex. Jur. p. 424, §§ 38, 39.

At the time the appellee, Brewer, made the last payment, the one here involved, on the tract of land purchased by him from Clark, Bishop & Bishop constituted a firm of lawyers at Gorman, Tex. From the evidence it appears that persons, including the appellee, interested in procuring loans from the insurance company, applied to said firm for such information. J. G. Bishop was a member of the firm, and it was to him that Brewer paid, on December 30, 1925, the sum of $476.76; $380.67 thereof being balance in full on the Clark loan No. 89944. The other $95.09 was on loan No. 92245. The payment was by check prepared by said J. G. Bishop and made payable to "J. G. Bishop Attorney Account." The check was cashed by said Bishop on January 16, 1926. By this transaction Brewer insists he paid the note and therefore became entitled to its cancellation as well as a lien on the land. Upon the face of the note the first written matter which appears is the following: "No agent is authorized to make any contract, verbal or written, differing from that written and printed on the face of this note, nor is any agent permitted to collect any part of it unless indorsed to him for collection by an officer of the company." The note provided for the payment of principal and interest "at the home office of the company in Cincinnati, Ohio." Kindred to the above quoted statement it contained the further emphatic provision that: "If this note is sent to Farmers State Bank at Gorman, Texas, or to any oth-

er bank for collection, I agree to pay exchange and collection expenses, and *this note shall not be deemed paid until the money is actually received by said company.*" (Italics ours.) The note was never in the possession of said Bishop, nor was it at any time delivered or indorsed to him for collection or any other purpose.

Brewer was well acquainted with said Bishop prior to and subsequent to the transaction here involved. In 1920 Brewer bought certain land known as the Forest farm, assuming an indebtedness held against it by the insurance company. Being notified by *Bishop & Bishop* that the *interest* was due thereon, he went to their office and gave *them* a check for the interest. The record is not clear that this check was made payable to Bishop & Bishop, but the litigants seem to so treat it in their briefs. In any event, it was not made payable to J. G. Bishop attorney account, and further the payment in fact reached the company, which receipted therefor direct to Brewer.

Subsequently Brewer made payment of principal and interest on other loans held by the company, and apparently assumed by him. In each instance except the last (which is the one first noticed in this opinion) the check was made payable directly to the Union Central Life Insurance Company. In each instance the check was prepared by said Bishop and signed by Brewer, at whose request Bishop transmitted the checks directly to the company, which indorsed and collected the same.

One of said checks, dated December 31, 1924, for $360, payable to the Union Central Life Insurance Company, was a "⅕th payment on Loan 101,365, for year 1924." A similar payment of $360 was made by a check of date January 1, 1925, payable to the Union Central Life Insurance Company and carrying a like notation, "⅕th payment on Loan 101,365, made for year 1925." These payments were on the Coker farm loan. A third payment of $400 was made by check December 31, 1924, payable to Union Central Life Insurance Company and carrying notation, "⅕th payment Loan No. 92,245, made for year 1924." By check dated January 1, 1925, another $400 payment was made direct to the insurance company, and the check bore notation, "⅕th payment Loan 92,245, payment for year of 1925." Two other payments were made direct to said company by check, one dated December 31, 1924, one January 1, 1925, each for $225, and each bearing notation "⅕th payment Loan No. 89,944,"—payment for the years 1924 and 1925, respectively. The last two payments were on the Clark loan, which is involved in this suit.

In chronological order this brings us again to the $476.76 payment made December 30, 1925, by check payable to "J. G. Bishop Attorney Account." The appellee, Brewer, in explanation of this check and why he came to sign it in that form, stated that, the loan being due, he went to Bishop's office to pay it off because he "had paid all the other payments through Bishop"; that, "Mr. Bishop made the check out and said, 'I will make it out to my attorney account because we will have to get the release and your abstract back, and I will put this to the attorney account because we don't want to send that in until we get the release and all fixed up.'" To this arrangement Brewer evidently consented. This was also the final payment on the Clark note. The testimony further discloses that, on January 3, 1925, the life insurance company received a letter dated December 31, 1924, signed by J. G. Bishop, inclosing the above two checks for $225 each, with the advice that they were to apply as payment on the principal of the Clark loan No. 89944. It developed that the remittance was $100.80 in excess of the amount actually due the company, and it refunded the excess directly to J. E. Brewer.

From the foregoing it is clear that the controlling question is: Did J. G. Bishop have apparent authority from the company to make the collection? If he did, the judgment is correct, and should be affirmed. If he did not, it ought to be reversed and rendered.

In the outset we hold that the foregoing checks, made payable directly to the insurance company and merely transmitted by the Bishops, are not to be considered as payments to the Bishops, as such acts appear to be interpreted by the appellee, but were payments direct to the company. Hence, viewing all the facts and circumstances from the standpoint of the plaintiff Brewer, if it could be said that the foregoing transaction of 1920, whereby he paid (by check payable to Bishop & Bishop) the interest on the Forest loan, had any probative value to establish apparent or ostensible authority in J. G. Bishop to make a collection of interest, nevertheless that fact alone, or taken in connection with all the other testimony, in no way established such authority in Bishop to collect the principal of the Clark note. Under the testimony as a whole, he was not authorized on any theory to collect either the principal or the interest. Brewer was charged with the knowledge of this fact, and had no right to presume the existence of said authority.

In Cunningham v. McDonald, 98 Tex. 316, 83 S. W. 372, 373, the Supreme Court of this state held that an agent for the collection of interest on a note does not have implied authority to collect the principal. It is there said: "If, however, it were admitted that the corporation, acting as the agent of Cunningham, collected the interest from McDonald, that fact would not tend to prove that it had the authority to collect the principal of the note. How can it be inferred from

the agency to collect the interest that the agency to collect the note existed? The one fact does not form a basis for the presumption of the other fact." Citing John Stuart & Co. v. Asher, 15 Colo. App. 403, 62 P. 1051; Walsh v. Peterson, 59 Neb. 645, 81 N. W. 853.

For a greater reason, it would seem, the collection of an installment of interest, remote in time and on a disconnected loan, would easily fall short of being any testimony in support of appellee's contention. Bartley et al. v. Rhodes (Tex. Civ. App.) 33 S. W. 604; Owens v. Hughes (Tex. Civ. App.) 71 S. W. 783.

A casual reading of the Cunningham Case discloses that it is in point on the contention here made for apparent authority, and refutes the same. That litigation or controversy was over the right of the alleged agent to collect the principal, and apparent authority was sought to be established on two grounds: (1) That the alleged agent collected three installments of interest; and (2) that it executed some character of contract guaranteeing principal and interest. Doubtless it was a stronger case on the facts than the instant one.

Further, a borrower making payment of principal to an agent has the burden of showing that he has either actual or apparent authority to receive such payments for the lender. Boltz v. Graf (Tex. Civ. App.) 43 S. W.(2d) 469; Hicks v. Hugo (Tex. Civ. App.) 43 S.W.(2d) 471; Hoffmaster v. Black, 78 Ohio St. 1, 84 N. E. 423, 21 L. R. A. (N. S.) 52, 125 Am. St. Rep. 679, 14 Ann. Cas. 877; Campbell v. Gowans, 35 Utah, 268, 100 P. 397, 23 L. R. A. (N. S.) 414, 19 Ann. Cas. 660.

In the notes to the case last cited the rule is laid down that the fact that one other than the holder of securities collects the interest thereon, without the possession thereof, for the holder, and without protest on his part, is not sufficient to raise a presumption or implication of authority to collect the principal without the possession of such security. As authority for this rule, among numerous cases there cited, is to be found Cunningham v. McDonald, supra, and Higley v. Dennis, 40 Tex. Civ. App. 133, 88 S. W. 400. This rule has special application to the facts of the instant case, as the note remained in the possession of the defendant, provided that both principal and interest were payable in Cincinnati, and contained the further significant stipulation that: "If this note is sent to the Farmers State Bank of Gorman, Texas, or to any other bank for collection, I agree to pay exchange and collection expenses and this note shall not be deemed paid until the money is actually received by said company."

In properly interpreting the facts of this case, there must be borne in mind another well-recognized rule to the effect that the authority to solicit or negotiate loans raises no presumption or implication of authority to collect such loans without the possession of the securities. Evans-Snider-Buel Co. v. Holder, 16 Tex. Civ. App. 300, 41 S. W. 404, 406; Western Security Co. v. Douglass, 14 Wash. 215, 44 P. 257; Englert v. White, 92 Iowa, 97, 60 N. W. 224; notes under Campbell v. Gowans, supra, page 419 of 23 L. R. A. (N. S.), 35 Utah, 268, 100 P. 397, 19 Ann. Cas. 660.

The fact that some borrowers, including appellee, may have applied to Bishop & Bishop for information concerning loans by the insurance company, is, in the light of the attending circumstances, of no significance or bearing on the controlling issues of the case.

Guided by the foregoing well-established rules and principles, this court is of the opinion that an application of them to the uncontradicted facts of the case leads to the conclusion that, however viewed from the standpoint of the appellee, J. G. Bishop, at the time of the collection, had not been clothed by the defendant with either actual or apparent authority to collect the balance due on the note. The elements of estoppel as against the company are lacking, and Brewer was not warranted in making the payment to Bishop. In the Hoffmaster Case above, with facts similar to those here, it was said that, where such a payment reaches the lender, it is good payment, but that which does not reach the lender is made at the risk of him who pays.

It is unfortunate that the appellee must now respond in payment of this balance of the indebtedness, but, as said in the opinion in the Evans-Holder Case, above cited: "It is a familiar rule that, where one of two innocent persons must suffer loss through the wrong of another, the party who enabled the person to commit the wrong must stand the injury." Apparently the appellee knowingly took an unwarranted risk when he made the check payable directly to J. G. Bishop, who seems to have solicited the same upon the pretext that such was necessary to enable him to repossess the abstract and obtain release, etc.

The facts of the case have been fully developed, and it is the judgment of this court that the judgment of the trial court be reversed and judgment here rendered in favor of the defendant. It is so ordered.