**BROWN et al. v. GUARANTY SECURITIES CO.   (No. 579—4045.)**\*

(Commission of Appeals of Texas, Section A. Oct. 29, 1924.)

**1. Venue** ⚖️➔**7 — Payment enforceable only within county where dated, where place of payment not stipulated.**

Where note is dated at a certain place, and no place of payment is stipulated, payment could not be forced in any county other than that embracing place where dated.

**2. Principal and agent** ⚖️➔**105(6) — Finding, that assignee permitting mortgagee to collect notes acquiesced in mortgagee acting as its agent warranted.**

Where payments were sent to assignee of chattel mortgage and notes secured, by original mortgagee, without requesting that notes be transferred to him, or that they should not be marked paid, *held*, that finding that assignee acquiesced in mortgagee acting as its agent in collecting such notes was warranted, and fact that original mortgagee indorsed such notes to assignee did not preclude him from becoming its agent.

**3. Principal and agent** ⚖️➔**148(2)—Mortgagor held not put on notice that payments to mortgagee unauthorized.**

That notes secured by chattel mortgage, when returned to mortgagor, were indorsed "Paid," followed by, name of assignee, and that assignee, prior to payment of one note, notified mortgagor that it was the owner, *held* not notice to mortgagor that payment to mortgagee was unauthorized, such indorsement not indicating any other place of payment than office of original mortgagee, nor that assignee objected to payments to original mortgagee.

**4. Sequestration** ⚖️➔**21—Reasonable rental value measure of damages where use of sequestered automobile was only incidental to plaintiff's work.**

In action for wrongful seizure of automobile under writ of sequestration, where plaintiff's use of the car was only incidental to her work, measure of damages would be reasonable rental value of car.

Error to Court of Civil Appeals of Sixth Supreme Judicial District.

Action by Mrs. M. Brown and others against the Guaranty Securities Company. Judgment for plaintiffs was reversed by the Court of Civil Appeals (254 S. W. 240), and they bring error. Reversed and remanded.

Samuels & Brown and O. C. House, all of Fort Worth, for plaintiffs in error.

Phillips, Trammell & Chizum and David B. Trammell, all of Fort Worth, and W. B. Hamilton and Irish & Henderson, all of Dallas, for defendant in error.

CHAPMAN, J. On February 6, 1919, Mrs. M. Brown, of Fort Worth, purchased from G. O. Hall, who was doing business under the firm name of the Hall Motor Company at Fort Worth, an automobile for which she paid $400 cash and executed her nine notes in favor of Hall Motor Company for $28.75 each, the first due March 15, 1919, and one due on the 15th of each month thereafter, the last note being due November 15, 1919, bearing interest after maturity. The notes were dated at Fort Worth, Tex., and were not made payable at any particular place. Mrs. Brown executed, in favor of Hall Motor Company, a chattel mortgage on the automobile to secure the payment of the notes. Before the first note was due, Hall Motor Company indorsed the notes to Guaranty Securities Company of Dallas, and also transferred to them the mortgage given by Mrs. Brown to secure the payment of the notes. Mrs. Brown testified that, when the first note fell due, she had no notice that Hall Motor Company had transferred the notes to the Guaranty Securities Company, and that she did not receive such notice until after she had paid seven of the notes. She went to the office of the Hall Motor Company about the 15th of March, for the purpose of paying the first note, and paid it to Hall and received from him a receipt for the payment, but was informed by him that he did not have the note in his possession but would get it for her. About the 15th of April, Mrs. Brown again went to the office of Hall Motor Company and paid the April note and received the March note marked "Paid— Guaranty Securities Co." Mrs. Brown was told by Hall that he did not have the April note, but would soon have it ready for her, and she got the April note when she went to pay the May note, and this arrangement was kept up and these payments made by Mrs. Brown to Hall Motor Company in this way, until she paid six of the notes. She also paid the seventh and eighth notes to Hall Motor Company, but never received the notes from him.

On receiving from Mrs. Brown payment of each of the first six notes, Hall would shortly thereafter send to the Guaranty Securities Company the principal of the note, and receive the note from the Securities Company marked "paid," but he did not send to the Securities Company the money received by him from Mrs. Brown for the payment of the seventh and eighth notes. Mrs. Brown testified that about the 10th of October, she received a notice from the Guaranty Securities Company that the September note was unpaid and that the October note would be

─────────

⚖️➔For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
\*Rehearing denied December 20, 1924.

due on the 15th of that month, and that about a week after receiving this notice she paid the October note .at the office of Hall Motor Company and received a receipt therefor. She had already paid the September note at the office of Hall Motor Company before receiving this notice. About the 10th of November, Mrs. Brown received notice from the Securities Company that the September and October notes were unpaid and that the November note would be due on the 15th of that month, and shortly thereafter she went to Dallas to see the officers of the Securities Company, and then paid the November note and was notified again that the September and October notes were unpaid. Mrs. Brown did not pay the September and October notes, and the Securities Company brought suit to collect these two notes and to foreclose the lien, and sequestrated the automobile. This suit was brought by Mrs. Brown against the Securities Company in the district court of Tarrant county for damages for wrongfully sequestrating her automobile. Upon special issues, the jury found that the writ of sequestration was wrongfully sued out and, under special issue No. 1, that G. O. Hall, who was doing business under the firm name of Hall Motor Company, collected and received the money on the first eight notes in question from Mrs. Brown for the Guaranty Securities Company with its knowledge and consent, and under special issue No. 4 found that the reasonable earnings of Mrs. Brown in her business with the use of her car over and above her expenses from the time the car was taken from her to the 1st of November, 1921, were $1,575. Judgment was rendered in favor of Mrs. Brown for this $1,575, together with $325, found to be the actual value of the car, and $50 exemplary damages.

The case was appealed to the Court of Civil Appeals at Texarkana (254 S. W. 240), and that court held that the facts were not sufficient to sustain the finding of agency on the part of Hall for the Securities Company in making the collection of the seventh and eighth notes, and the action of said court in so holding is now before us for review.

Defendant in error, Guaranty Securities Company, also takes the position that if the facts are sufficient to sustain the finding of agency, the question was not submitted to the jury, and was therefore waived by plaintiff in error, Mrs. Brown. This question of ostensible or implied agency is discussed by 7 Cyc. p. 1031, as follows:

"Express authority is not necessary to render payment to a person as agent effectual, but authority to receive payment may be implied from facts and circumstances existing prior to or in connection with the payment, and the holder of paper may be estopped to deny the authority of one whom he has clothed, intentionally or through negligence, with ostensible authority."

And in 2 Corpus Juris, p. 435, as follows:

"The relation of agency does not depend upon an express appointment and acceptance thereof, but it may be, and frequently is, implied from the words and conduct of the parties and the circumstances of the particular case. It may be implied from a single transaction, but it is more readily inferable from a series of transactions."

And on page 443 of the same volume this language is used:

"An agency may also be implied from the recognition or acquiescence of the alleged principal as to acts done in his behalf by the alleged agent, especially if the agent has repeatedly been permitted to perform acts like the one in question."

In Quinn v. Dresbach et al., 75 Cal. 159, 162, 16 P. at page 763 (7 Am. St. Rep. 138), the Supreme Court of California speaks on this question as follows:

"The Civil Code provides that 'ostensible authority is such as a principal, intentionally or by want of ordinary care, causes or allows a third person to believe the agent to possess.' * * * And this is the embodiment of a well-established principle of the common law, which has been called 'the foundation of the law of agency.' "

In Bradstreet Co. v. Robert Gill, 72 Tex. at page 115, 9 S. W. 753, 754 (2 L. R. A. 405, 13 Am. St. Rep. 768) our Supreme Court discusses agency in this way:

"The court refused a charge asked by defendant to the effect that if it was not the intention of defendant to make Finney its agent, and if it was not the intention of Finney to become its agent, to find for defendant on the plea in abatement. The refusal to give the charge is assigned as error. The intention of the parties, it is true, must control; but that intention is to be gathered from what was actually done or agreed by the parties, not from what they may have privately meant or supposed they meant. Agency or not is a question of law to be determined by the relations of the parties as they in fact exist under their agreements or acts. If relations exist which will constitute an agency it will be an agency whether the parties understood it to be or not. Their private intention will not affect it. It was not error to refuse the charge."

In Continental Guaranty Corporation v. Smoke, 29 Ga. App. 438, 116 S. E. page 14, the Court of Appeals of Georgia had under consideration the precise question that we have in this case, and in that case made this observation: '

"Where a negotiable promissory note is payable in installments in certain definite amounts upon various consecutive dates, and before the maturity of any of the installments the payee, without the knowledge of the maker, transfers the note to another, and the maker thereafter continues to pay to the payee a number of the installments as they fall due, which the payee transmits to the transferee, who accepts the same in payment of the in-

stallments due, such a course of dealing is sufficient to authorize the inference that the transferee of the note had constituted the payee as the transferee's secret agent in dealing with the maker to collect the installments as they fell due. Where the maker paid to the payee a subsequent installment due on the note in accordance with the practice above outlined, and without any notice that the payee had no authority to receive such payment, the maker could in a suit by the transferee set up as a defense a payment which he made to such secret and concealed agent, even though the latter had not remitted to the transferee. * * * In a suit by the transferee against the maker, where the evidence discloses the above state of facts, the verdict rendered for the defendant was authorized, and the judge of the superior court did not err in overruling the certiorari."

In the case of Doe v. Callow et al., 64 Kan. 886, 67 P. 824, Callow executed his note and mortgage to the Globe Investment Company. The note and the interest coupons were payable to the company at its office in Boston, Mass. The investment company transferred the note and mortgage to the National Bank of Newberry, and it in turn transferred them to L. W. Doe. When the Globe Investment Company transferred the note, it guaranteed the payment of the principal of the note and each of the interest coupons attached thereto. For about 2½ years the plaintiff, Doe, allowed the Globe Investment Company to · collect from Callow the interest in semiannual payments, and through it forwarded the coupons to the maker. After making these interest payments for the time stated, Callow then paid to the Globe Investment Company the principal of the note. All interest payments were acknowledged to have been paid by the plaintiff, but the company failed to pay the principal to the plaintiff, Doe, and became insolvent. Callow had no knowledge that the note had been transferred until about 15 months after full payment of principal and interest had been made. Under these facts the trial court held the Globe Investment Company to be the agent of Doe in receiving the principal due on the note, which finding was affirmed by the court of appeals, and the finding of the trial court and the court of appeals was affirmed by the Supreme Court in these words:

"On these facts the trial court held that the company was the agent of Doe, and, taking into consideration the relationship between the company and Doe, by reason of the guaranty, as well as the other facts in the case, we think the testimony is sufficient to sustain the finding, and for that reason the judgments of the district court and of the court of appeals will be affirmed."

The holdings made in the Georgia and Kansas cases are sustained in the following similar cases: Fowle v. Outcalt, 64 Kan. 352, 67 P. 889; City Savings & Trust Co. v. Peck et al., 92 Vt. 310, 103 A. 1020; Mc-Vay v. Bridgman et al., 21 S. D. 374, 112 N. W. 1138; Campbell v. Gowans, 35 Utah, 268, 100 P. 397, 19 Ann. Cas. 660, 23 L. R. A. (N. S.) 414; and Doyle v. Corey, 110 Mass. 337, 49 N. E. 651. The case of Astoria State Bank v. Markwood, 38 S. D. 437, 161 N. W. 815, cited by defendant in error, holds exactly opposite to the holdings in the above-mentioned cases, but this case is by a divided court, and a minority of the court wrote a very pointed opinion upholding the cases cited by plaintiff in error.

[1, 2] The notes in question in the case under consideration were dated at Fort Worth, and no place of payment was stipulated, and therefore payment could not be forced in any county other than Tarrant. According to Mrs. Brown's testimony, no demand was ever made of her by the Securities Company for the payment of the notes, and when she made the first payment she knew of no place to go to make this payment other than to the office of the Hall Motor Company at Fort Worth, and · the only negligence that can be attributed to her was her failure to demand her note when she made payment of same, but she did the next best thing by taking from the Hall Motor Company a receipt for the money.

The Securities Company knew that Mrs. Brown was the maker of the notes, that they were of very recent date, and that her automobile was mortgaged to secure the payment of them, and that the payments were being made promptly, and that the money was being sent to them by Hall, and that Hall was making no requests that the notes be transferred to him, nor that they should not be marked paid by the Securities Company, and after having continued this manner of receiving their money until six of the notes were paid, we are of the opinion that any diligent business man should have known that the notes were being paid by the maker of them, and that Hall was receiving the payments, and that the jury was warranted in finding that the Securities Company acquiesced in the collection of the notes for them by Hall, and we can see no good reason why the fact that Hall indorsed the notes to the Securities Company would preclude him from becoming their agent in collecting from the maker of the notes.

[3] Defendant in error insists that when Mrs. Brown received the March note marked "Paid—Guaranty Securities Company" this was notice to her that the notes had been transferred to the Securities Company by Hall, but there is nothing in this indorsement to indicate any place that Mrs. Brown could make payment other than at the office of Hall Motor Company, and nothing to indicate that there was any objection on the part of the Securities Company to her making the payment as she had made it.

Defendant in error also insists that Mrs. Brown should not have paid to Hall the

October payment for the reason that she had received notice from the Securities Company prior to the date that this note was due, and that they were the owners of the note, but there is nothing in this notice to indicate that there was any objection on the part of the Securities Company as to Mrs. Brown making payment to Hall as she had been doing theretofore.

We think that the Court of Civil Appeals erred in holding that the evidence was not sufficient to sustain the question of agency of Hall for the Securities Company, and we cannot agree with the contention of the defendant in error that special issue No. 1 did not submit the question of agency to the jury.

[4] In view of another trial we think that the proper measure of damages was not submitted in special issue No. 4. The facts show that Mrs. Brown was using her automobile as a real estate agent, and the court submitted as a measure of damages the reasonable earnings of Mrs. Brown in her business with the use of her car over and above her expenses from the time the car was taken from her until the 1st day of November, A. D. 1921. The car was only incidental to her work, and therefore in our opinion the measure of damages would have been the reasonable rental value of the car.

We recommend that the judgment of the court of Civil Appeals be reversed, and that the case be remanded to the trial court.

CURETON, C. J. The judgment recommended in the report of the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court.

We approve the holding of the Commission of Appeals on the question discussed in its opinion.