## GREEN v. HAGENS.

### No. 9746.

Court of Civil Appeals of Texas. Galveston.
May 20, 1932.

Rehearing Denied June 9, 1932.

H. W. Wallace, of Cuero, for appellant.

Green & Green and Crain & Hartman, all of Cuero, for appellee.

LANE, J.

This suit was instituted by Ernest Hagens against Wm. D. Green, individually, and as independent executor of the estate of William Green, deceased, and against Mrs. Julia C. Green, widow of William Green, G. A. Lowrance, and M. C. Driscoll, to recover upon a promissory note for the sum of $2,000, dated November 14, 1925, due two years after date, signed "Green, Lowrance & Driscoll."

Plaintiff alleged that at the time said note was given William Green, G. A. Lowrance, and M. C. Driscoll were partners, and that said note was signed by M. C. Driscoll as a member of said partnership, in the course of the partnership business, and that he was acting for and in behalf of said partnership. He alleged that William Green died on May 11, 1927, that his will was duly probated, and that Wm. D. Green is the independent executor of the estate of William Green, deceased, and that G. A. Lowrance and M. C. Driscoll, after the execution of said note, became insolvent, and are now insolvent. He further alleged certain acts of the executor since the death of his father, the testator, which he claimed estopped defendant Wm. D. Green from denying liability on the note, either as executor or individually. He further alleged that the defendants Wm. D. Green and Mrs. Julia C. Green are the sole beneficiaries of the will of William Green, deceased, and under the will acquired title to certain specific real estate described in the petition, alleging the value of same to be in excess of the amount involved in the suit, and that thereby Wm. D. Green, individually, and as executor, and Mrs. Julia C. Green, and the estate of William Green, deceased, became bound and liable to pay said note. He alleged that two annual interest installments had been paid on said note, that the note was past due and unpaid, and had been placed in the hands of attorneys for collection, whereby the additional 10 per cent. of principal and interest became due. Plaintiff asserted a lien upon the specific property described in the petition, prayed judgment against M. C. Driscoll, G. A. Lowrance, Wm. D. Green, individually and in his capacity as executor, and against Mrs.

---

773

Julia C. Green, and the estate of William Green, deceased, and the alleged partnership of Green, Lowrance & Driscoll, for the principal, interest, and 10 per cent. attorney's fee owing on said note, that same be declared to be a lien upon the specific property described in the petition, and for foreclosure of such lien.

Defendant M. C. Driscoll answered, pleading his discharge in bankruptcy and praying that plaintiff take nothing against him.

Lowrance made default, and judgment was rendered against him.

The appellant, Wm. D. Green, for himself and as independent executor, and the defendant Mrs. Julia C. Green, answered by general and special exceptions, general denial, and under oath denied the allegations of partnership, also denied that M. C. Driscoll had any authority to bind or obligate William Green upon the note, and further alleged that the estate of William Green, deceased, was still in process of administration by the independent executor, that said administration was not completed, and that no property of the estate had been relinquished or paid over by the executor to any of the beneficiaries of the will.

The trial court sustained the general demurrer by the defendant Mrs. Julia C. Green, and she went out of the case, and sustained the exception of the executor to that part of the plaintiff's petition wherein he sought to establish a lien on the specific property described therein, and such claim of lien and foreclosure thereof was by the final judgment denied. He also sustained appellant Wm. D. Green's special exception No. 9, which challenged the allegations of the petition seeking to recover personal judgment against him, and the final judgment was in his favor as to personal or individual liability.

Before the introduction of any evidence, the truth of the answer of M. C. Driscoll pleading his discharge in bankruptcy being assented to by the plaintiff Hagens and defendant Wm. D. Green, individually and as said executor, and by Mrs. Julia C. Green, the trial judge held that such plea was sufficient to entitle Driscoll to an order dismissing him from the suit, and upon such holding Driscoll was dismissed from the suit, and he was by an order of the court discharged of liability upon the note sued upon.

The case was tried before the court without a jury, and judgment was rendered against Wm. D. Green as independent executor of the estate of William Green, deceased, and G. A. Lowrance, who made no answer, jointly and severally, for the sum of $2,828.-20, discharging Wm. D. Green, individually, and Mrs. Julia C. Green and M. C. Driscoll from any and all liability on the note.

From such judgment Wm. D. Green, executor, has appealed.

Appellant's contentions are (1) that there is no evidence to show that appellant recognized or in any way obligated himself as executor to pay the note sued on; (2) to show that he, as such executor or otherwise, received or acquired any consideration for a promise to pay said note; (3) to show that he, as such executor or otherwise, ever promised to pay said note; (4) to show that William Green, deceased, was in partnership with M. C. Driscoll at the time Driscoll borrowed appellee's money and executed the note to appellee, or to show that William Green, deceased, was at any time a member of the partnership of "Green, Lowrance & Driscoll" as alleged by appellee; (5) to show that William Green, deceased, authorized Driscoll to borrow appellee's money or to execute the note of appellee; and (6) to show that William Green, deceased, at any time knew that Driscoll had borrowed appellee's money or that he had executed the note sued upon. Wherefore the court erred in rendering judgment against appellant as executor of the estate of William Green, deceased.

We overrule appellant's contentions. The judgment is in favor of all defendants who answered, including Wm. D. Green, personally, and against Wm. D. Green, executor, only as such. It is apparent from the record that the judgment against the executor was not rendered upon any theory of estoppel founded upon any act of Wm. D. Green, as executor, or as an individual, but that it was rendered upon a finding that at the time Driscoll got appellee's money and executed the note sued on William Green, deceased, was a member of a copartnership composed of William Green, G. A. Lowrance, and M. C. Driscoll, transacting business under the firm name of Green, Lowrance & Driscoll.

Appellant seemingly concedes that, if William Green, deceased, was a partner in a firm composed of himself, G. A. Lowrance, and M. C. Driscoll, transacting business under the firm name of "Green, Lowrance & Driscoll," William Green during his life would have been liable on the note which was sued upon, signed "Green, Lowrance & Driscoll," by M. C. Driscoll, and that, if such partnership had been proven by competent evidence, the judgment could be sustained, but his principal contention is that no such proof was made.

We cannot agree with appellant's contention that there was no competent evidence showing that William Green, deceased, was a partner of the firm of Green, Lowrance & Driscoll. We think there was ample evidence to show that said Green was a partner of such firm.

The witness Welhausen testified that he, William Green, and M. C. Driscoll were all officers of the Yoakum State Bank, William Green being president and he and Driscoll being active vice presidents. William Green

retired as president of said bank about 1925. He and the witness Welhausen had various business activities together. Green had often spoken to witness about Driscoll being very active and making a lot of money, and wanted them to go in with him; that he (Welhausen) declined to go in on this partnership, but Green did associate himself with Driscoll and Lowrance; that they first bought a large tract of land in Karnes county, but their activity as a partnership or association was not limited to this one transaction; that they acquired town property in Yoakum, and vendor's lien notes; that they sold notes, Green himself being active in some of the transactions, the witness saying: "They borrowed money, and I know of my own knowledge that Mr. Green knew about the borrowing of money by that firm." He further testified: "I judge that Green, Lowrance & Driscoll made at least a dozen purchases and sales of land," and those transactions went through the bank; that Mr. Green, in speaking of this association, would refer to it as a partnership.

The witnesses Treybig and Chaloupka, employees of the bank, testified that from 1921 to the closing of the Yoakum State Bank in 1928 there was on the books of the bank an account in the name of "Green, Lowrance & Driscoll," and that by frequent inspection of such books, particularly the account in which he was specially interested, William Green, deceased, kept familiar with the status of such accounts, which included the account of "Green, Lowrance & Driscoll."

Treybig, who was first bookkeeper, then teller, and finally cashier, of the bank, testified as follows: ."During the years 1925 and 1926, Mr. William Green did visit the Yoakum State Bank. Mr. Green was president of the bank up to either January, 1925, or January, 1926, I don't remember just what date. * * * During the year 1925, as to how frequently Mr. William Green visited the bank, I state that sometime he might come every other day, and then he might not be there for three or four weeks. That was the condition that prevailed during the year 1925. When Mr. Green did visit the Yoakum State Bank during the year 1926, he did go inside the bank proper where the books were kept, and where the employees were working. To your question as to my seeing Mr. Green examine the books of the bank, I answer, well, he would not just eexactly examine the books of the bank. He would usually call to look at his accounts, the various accounts in his name or in which his name appeared in that bank. * * * I know that he examined those accounts. * * * During the years 1925 and 1926, I did see Mr. William Green examine that ledger and those accounts. During those years he examined that ledger and those accounts usually when he came to the bank, unless he came often.

I testified in response to a question by Mr. Wallace that I could not recall the date but I knew of instances or times when Mr. William Green did call upon me to show him his accounts and I would turn to them and show them to him in the ledger. At those times there was an account kept in that ledger of the Yoakum State Bank in the name of Green, Lowrance & Driscoll. Mr. Green did examine those books in the manner and at the time I have stated, along during the years 1920 down to 1926. And during those years there was an account in those books of the Yoakum State Bank in the name of Green, Lowrance & Driscoll."

Chaloupka, a bookkeeper for the bank, testified that there was an account on the books of the bank in the name of "Green, Lowrance & Driscoll"; that he mailed to Mr. Green and the others of the firm of "Green, Lowrance & Driscoll" statements of the firm account; that such statements showed the deposits made and the checks drawn; that Mr. Green was very active in keeping up with said account, and did keep informed of all that was done in connection with it; and that he was certain that Green knew of the Hagens note, and of the money acquired by its execution, which went into said account.

M. C. Driscoll testified that from 1920 to the time the bank was closed in 1928 he was its general manager; that William Green, deceased, G. A. Lowrance, and himself purchased about 1,200 acres of land in Karnes county; that they purchased other lands, several scattered tracts; that "Green, Lowrance & Driscoll" owned several pieces of residential property, perhaps six or more in the city of Yoakum, some of which were rented by "Green, Lowrance & Driscoll," and the rents were collected by such firm; that "Green, Lowrance & Driscoll" sold some of those lots in Yoakum. He testified that an account was kept in the books of the bank in the name of "Green, Lowrance & Driscoll," which was frequently examined by Mr. William Green, deceased; that Green understood that such account was being so run; that Mr. Green spoke of the association of Green, Lowrance & Driscoll as a partnership; that in the transaction of business by "Green, Lowrance & Driscoll" he (Driscoll) wrote almost all of the checks drawn against the account of the firm; that the Hagens note, the one sued upon, was signed "Green, Lowrance & Driscoll" by him; that he got $2,000 from Hagens on such note, and placed the same to the credit of the account of "Green, Lowrance & Driscoll" in the bank, and it was used in the business of "Green, Lowrance & Driscoll."

There was other testimony which tended to show that the association of Green, Lowrance & Driscoll was a partnership, and that William Green, deceased, was one of the partners of such firm, but we refrain from stating

such testimony, as we think that already stated is sufficient to support the finding of the court that he was such partner.

■ By appellant's propositions Nos. 4, 5, 6, 7, 8, 9, and 11, it is in effect contended that the court erred in permitting the witness Welhausen, over his objection, to testify that William Green, deceased, G. A. Lowrance, and M. C. Driscoll composed an association with the name of "Green, Lowrance & Driscoll," and that such association was a partnership, because such testimony was but the opinion and conclusion of the witness and not facts.

We overrule the contention. We have already set out the testimony of Welhausen in which he detailed the facts upon which he reached the opinion and conclusion that the association and business transactions carried on by such association constituted a partnership. In other words, the witness testified fully as to the facts within his knowledge upon which he based his conclusions and use of the term "partnership." We agree with the witness that the facts stated by him are sufficient to support a finding that the partnership alleged by plaintiff Hagens did in fact exist at the time Driscoll got the money from Hagens and executed the note sued on, and was the act of the firm of Green, Lowrance & Driscoll.

The court permitted the witness Welhausen to testify, over the objection of appellant, that Green, deceased, Lowrance, and Driscoll owned real estate in Yoakum; that he judged that they made at least a dozen purchases and sales of land; that some of the land transactions went through the bank. Appellant assigns the admission of such testimony as reversible error. He contends, first, that the best evidence of facts testified to by the witness were the deeds of conveyance; second, that the testimony of the witness that he judged Green, Lowrance & Driscoll purchased and sold a dozen tracts or parcels of land was a mere guess, and therefore inadmissible; and, third, that the documents which passed through the bank were the best evidence that such documents did pass through the bank.

We think the testimony was admissible, and that it was not subject to the objections urged thereto. We also think that, if it be conceded that such testimony was erroneously admitted, still its admission would not constitute reversible error, since the case was tried before the court without a jury. It is well settled that the mere fact that improper evidence has been adduced will not require a reversal where the trial was before the court without a jury. Lawther Grain Company v. Winniford (Tex. Com. App.) 249 S. W. 195; Ferguson v. Ferguson (Tex. Civ. App.) 11 S.W.(2d) 214; Schleicher v. Markward, 61 Tex. 99. To constitute the admission of such evidence reversible error, there must be some showing that this improper evidence affected the decision of the court. Lawther Grain Company v. Winniford, supra, and authorities there cited.

■ Mrs. Varue Lienhard was permitted to testify over objection of appellant that her mother, Mrs. Alexander, held a note signed Green, Lowrance & Driscoll, by M. C. Driscoll; that she and her mother saw Mr. William Green, deceased, in Yoakum in 1926; that she and her mother went to the office where Mr. Driscoll and Mr. Green were, Mr. Driscoll introduced Mr. Green to her mother, and said to her that Green was the man that was on the note; that her mother told Mr. Green that she wanted to take the note from the Yoakum bank where it was deposited and deposit it in a bank at Cuero; that Mr. Green told Mrs. Alexander that he objected to having any of his notes that his name was signed to being placed in different places; and that he wanted her to leave the note in the Yoakum bank.

The objection to the admission of this testimony of Mrs. Lienhard was, that it was in relation to transactions between people not involved in this suit and not related to the issue involved in this suit, and therefore irrelevant and immaterial to any issue in the case.

The testimony was admissible on the issue as to whether Green was in partnership with Lowrance and Driscoll, and as tending to show that Green recognized Driscoll's authority to execute the note in question in the firm name of "Green, Lowrance & Driscoll." Texas Jurisprudence, vol. 17, § 132, at page 380; Brown v. Guaranty Securities Company (Tex. Com. App.) 265 S. W. 547.

■ Witnesses Treybig and Chaloupka were permitted, over objection of appellant, to testify there was on the books of the bank an account, in 1926, in the name of Green, Lowrance & Driscoll, and that Green examined the same from time to time. Appellant assigns the admission of such testimony as error.

We overrule the assignment. The testimony was clearly admissible as tending to show that Green knew that the transactions engaged in by himself, Lowrance, and Driscoll were being transacted under the firm name of "Green, Lowrance & Driscoll," and that Driscoll was performing transactions for the parties, and that he was doing so as a member of the firm with actual or implied authority.

■ It is shown that, while M. C. Driscoll was originally a party to the suit, he was, upon his plea of discharge in bankruptcy, by the assent of defendants dismissed from the suit before any evidence was introduced, and that, after such dismissal, he was permitted to testify to conversations and transactions

had with Green, deceased, over the objection of defendants that he was a party to the suit, and therefore not a competent witness to testify to such conversations and transactions.

The exact question here involved was determined adversely to the contention here made by appellant in the case of Williams v. Kincannon (Tex. Civ. App.) 265 S. W. 925. In that case plaintiff sought recovery against defendant Rotan on the ground, among others, that at the time of the execution and delivery of the notes sued on a partnership existed between the deceased, Williams, who was plaintiff, and the defendants, that said notes were executed in the partnership business, and that said defendant Rotan was liable thereon as a member of such partnership. The defendant Rotan was not a party to the suit when first filed, but was made a party thereto by an amended petition. An interlocutory judgment in Rotan's favor that plaintiff take nothing against him was entered by the court. The contention of plaintiff in that case was that, notwithstanding the interlocutory judgment in defendant Rotan's favor, he still remained a party to the suit, and was therefore disqualified as a witness as to statements by or transactions with deceased, Williams, who was plaintiff, just as appellant is contending in this case that, notwithstanding the interlocutory judgment in Driscoll's favor, he still remained a party to this suit, and therefore was disqualified as a witness as to statements by, or transactions with, William Green, deceased. In said case of Williams v. Kincannon the appellate court held that, after the entry of the interlocutory judgment in favor of defendant Rotan, he was no longer a party to the suit, and was therefore a competent witness, just as the trial court held in this case that Driscoll, after the entry of the interlocutory judgment in his favor, was no longer a party to this suit, and was therefore a competent witness. See Tynburg & Co. v. Cohen, 67 Tex. 220, 2 S. W. 734.

◼ Appellant offered to prove by one Stratman that William Green, deceased, stated that he was not, and had never been, in partnership with Driscoll or Lowrance. Upon objection of appellee, such testimony was rejected. Appellant assigns such rejection as reversible error. We overrule the assignment. The statement of Green sought to be reproduced by the witness was clearly self-serving and inadmissible.

◼ Appellant sought to testify that he examined the Green, Lowrance & Driscoll account in the bank, and had found part of the checks and charge slips made by Driscoll against such account, but that he was not able to find vouchers supporting the charges; that there had been paid out of such account between twenty and twenty-five thousand dollars for which he could find no vouchers or canceled checks, and that it was impossible to determine what went with that amount of the money that had been deposited in such account.

Such proffered testimony was, upon objection by appellee, rejected, and appellant assigns its rejection as reversible error.

Clearly such proffered testimony was irrelevant and immaterial to any issue in the case. It was no error to reject it.

◼ M. O. Driscoll, while testifying, stated that he signed the name of Green, Lowrance & Driscoll to a note for $1,500 for Mrs. Schmidt; that, after its execution, it was destroyed; that the $1,500 was credited back to Mrs. Schmidt; that the note was surrendered to the bank, and he tore it up and mailed the pieces to Mr. Wm. D. Green after the death of William Green, deceased; that the note was made during the life of Green, deceased; that a Mr. Guynn called his attention to the Schmidt note and gave it to him; that he had forgotten what he had done with it; that he thought he had torn it up; that he had not known that Mr. Schmidt had demanded payment from Mr. Green; that Mr. Wm. D. Green did ask him about the note, and he told him that Mr. Guynn had told him that he had found the note among the papers in the bank; that Mr. Green did tell him that Mrs. Schmidt's brother had asked him (Green), something about the note and wanted to know if it was in existence.

After Driscoll had so testified, appellant Green took the stand and was asked to state what he knew about the Schmidt note. In response to such question, he sought to substantially reproduce the facts testified to and admitted to be true by Driscoll, and no other relevant or material fact. Upon objection of appellee to such repetition, the court rejected the proposed testimony, and appellant has assigned such rejection as reversible error.

We overrule the assignment. As shown, Driscoll had testified to and admitted the truth of every relative and material matter which appellant sought to testify to; hence the proposed testimony of appellant would add nothing tending to impeach Driscoll, as contended by appellant.

We have reached the conclusion that the judgment should be affirmed, and it is accordingly so ordered.

Affirmed.