**ELLIOTT et al. v. LANGHAM et al.**

No. 1365.

Court of Civil Appeals of Texas. Waco.
April 20, 1933.

Rehearing Denied May 18, 1933.

See, also, 56 S.W.(2d) 890.

Arthur Lee Moore and Mack Taylor, both of Fort Worth, and Bush & Parten, of Franklin, for plaintiffs in error.

Oliver J. Todd, of Beaumont, and J. L. Goodman, of Franklin, for defendants in error.

GALLAGHER, Chief Justice.

This suit was instituted in the district court of Robertson county by Emmet E. Langham and certain associates in interest, against Harry W. Elliott, to recover damages for breach of contract to drill a well for the discovery of oil in said county. W. A. Todd and A. P. Barrett, duly qualified and acting receivers of the properties of said Elliott, were joined as parties defendant. The parties will be designated as in the trial court. Plaintiffs, on the 16th day of September, 1931, acquired oil and gas leases on a solid block of land in Robertson county. Said leases covered an aggregate of approximately 7,150 acres. Plaintiffs, as a part of the consideration for the assignment to them of said leases, expressly stipulated that they, or some one for them, would begin the drilling of a test well in the territory covered thereby on or before December 13, 1931, and that such drilling should be continued with reasonable diligence to a depth of 4,200 feet, unless oil and gas, or either, in paying quantities was found at a lesser depth. It was expressly stipulated that a failure to begin such well on or before such date should forfeit all their rights and title in and to said leases.

Plaintiffs, on the 16th day of September, 1931, entered into a contract with defendant Elliott, by the terms of which he agreed to drill said well in accordance with said requirements, in consideration of the assignment to him of certain of said leases selected and agreed upon and covering approximately 3,320 acres of said leased lands. Defendant Elliott breached said contract, and wholly failed to begin said well on or before said date, and never did begin the same. On December 21, 1931, the defendants W. A. Todd and A. P. Barrett were duly appointed by a district court of Tarrant county as receivers of all the properties of said Elliott.

The case was tried to a jury and submitted on special issues. In response to issues prepared and submitted by the court, the jury found, in substance: (1) The acreage constituting the block of land covered by said leases would have had a market value on and subsequent to December 13, 1931, had defendant complied with his contract. (2) The reasonable value of the leases held by plaintiffs after deducting 3,320 acres conveyed to defendant was on an average $3 per acre. (3) Defendant Elliott was not induced to enter into said contract by fraudulent representations made to him by plaintiffs.

In response to issues prepared by plaintiffs and submitted at their request, the jury found, in substance: (1) The entire block of leases had a market value on September 16, 1931, when Elliott entered into said contract with plaintiffs. (2) Such value was $21,465.66 (an average of $3 per acre). (3) Said leases had no market value on December 13, 1931 (the date of defendant's default).

The court entered judgment in favor of the several plaintiffs against defendant Elliott for the sum of $11,472, being at the rate of $3 per acre on all the land covered by leases retained by plaintiffs and excluding leases conveyed to Elliott for drilling said well. The court, as a part of said judgment, ordered the same certified to the court in which such receivership was pending to be paid in due course of the administration thereof. Defendants have sued out a writ of error to this court.

### Opinion.

Defendants, by appropriate assignments of error, complain of the action of the court in overruling their general demurrer, and in refusing their request for a peremptory instruction at the close of the evidence. The specific contention urged thereunder, and the only one, is that plaintiffs failed to allege and prove that they had a good title to the leases retained by them and made the basis for calculating the damages awarded.

■ The contract between plaintiffs and defendant Elliott which created their reciprocal right and duties, and which is made the basis of this suit, was set out in hæc verba in plaintiffs' petition. Said contract contained the specific recital that plaintiffs owned certain oil and gas leases, and further recitals showing in general terms the location of the land covered by such leases and that the same were held in escrow by one Sandifer. The leases so held by Sandifer had been on that day conveyed by him to plaintiff Langham as trustee. Each lease was set out and described separately in said conveyance, and

the grantor expressly covenanted that he was the lawful owner of said leases and had the right and authority to sell and convey the same. Said conveyance was set out in hæc verba in plaintiffs' petition. Plaintiffs expressly alleged that said conveyance and leases were to be held in escrow and delivered to plaintiff Langham should he "begin or cause to be begun, on or before December 13, 1931, the drilling of a well for oil and/or gas upon some one or upon any one of the tracts of land described in said oil and gas lease." They further alleged that, should said Langham, or some one for him, not have begun the drilling of such well on or before said date, said leases and the assignment thereof were to revert to said Sandifer and be of no further force and effect so far as plaintiffs were concerned. Other allegations fully identified the leases described in said conveyance with those referred to in said contract between plaintiffs and defendant, and tended to show that the same were secured as a result of negotiations with the owners of the several tracts of land covered thereby. The particular leases to be delivered by Langham and his associates to Elliott as consideration for drilling the well were agreed upon and a list thereof attached to their contract. Considering plaintiffs' pleadings as a whole, we think that, as against a general demurrer, their ownership of and title to the residue of said leases, subject only to compliance by Elliott with the terms of his contract, was sufficiently alleged.

 While defendants requested the court to charge peremptorily in their favor, there is nothing in the record tending to show that they urged specifically as ground for such request that the plaintiffs had not shown that they had good title to the leases which were retained by them and not included in the leases which they agreed to deliver to Elliott when he began the well. So far as any affirmative showing to the contrary is concerned, this specific contention is advanced for the first time in defendants' brief in this case. Evidence of ownership of said leases and the title of plaintiffs thereto is therefore, as might be expected under such circumstances, largely incidental, and included in testimony presented on other phases of the case. The contract sued on, however, contained a specific recital that plaintiffs were the owners of certain oil and gas leases, and the testimony is ample to show that the leases referred to covered the entire acreage involved in this case, and included both the leases to be transferred and delivered to Elliott and those to be retained by plaintiffs. Said contract was executed by Langham and Spencer, one of his associates in interest, and also by the defendant Elliott himself. The recitals of ownership by plaintiffs of said leases contained in said contract, as between the parties thereto, constituted evidence of such ownership. Kimbro v. Hamilton, 28 Tex.

560, 561, 567, 568; Corzine's Heirs v. Williams, 85 Tex. 499, 506, 22 S. W. 399; Burk v. Turner, 79 Tex. 276, 278, 15 S. W. 256; Martin v. Weyman, 26 Tex. 460, 467; Melcher v. Higbee (Tex. Civ. App.) 165 S. W. 478, 481, par. 2; Moss-Tate Inv. Co. v. Owens (Tex. Civ. App.) 22 S.W.(2d) 1096, 1097, par. 2 (writ refused); Havard v. Smith (Tex. Civ. App.) 13 S.W.(2d) 743, 744, pars. 1 and 2; Shaw v. Gillespie (Tex. Civ. App.) 270 S. W. 1043, 1046, par. 2; Orbeck v. Alfei (Tex. Civ. App.) 276 S. W. 947, par. 2; Gardner v. Wesner (Tex. Civ. App.) 55 S.W.(2d) 1104, 1107, par. 5. Parol testimony was introduced without objection which showed that at least a part of the grantors in the leases involved herein resided upon and owned the lands leased by them. There was also testimony that Sandifer, who transferred the leases to plaintiffs, held the same in trust for the owners of the lands covered thereby. The title of plaintiffs to said leases was not challenged herein, and was only a collateral fact bearing on the measure of their damages arising out of defendant's breach of his contract to drill the well. Such being the case, parol evidence was competent on the issue of ownership or title. Bexar County v. Terrell (Tex. Sup.) 14 S. W. 62, 65; Texas Co. v. Burkett (Tex. Civ. App.) 255 S. W. 763, 764, par. 1 (affirmed 117 Tex. 16, 296 S. W. 273, 54 A. L. R. 1397); Texas Co. v. Ramsower (Tex. Civ. App.) 255 S. W. 466, 469, par. 10 [affirmed (Tex. Com. App.) 7 S.W.(2d) 872, rehearing denied Id. (Tex. Com. App.) 10 S.W.(2d) 537]; Wetzel v. Satterwhite, 59 Tex. Civ. App. 1, 125 S. W. 93, 95; Campbell v. Peacock (Tex. Civ. App.) 176 S. W. 774, 777, par. 10; Oaks v. West (Tex. Civ. App.) 64 S. W. 1033, par. 5; East Side Realty Co. v. Fowler (Tex. Civ. App.) 202 S. W. 999, 1000; Green v. Hagens (Tex. Civ. App.) 51 S.W.(2d) 771, 775, par. 4; Lowry v. Saxton (Tex. Civ. App.) 23 S.W.(2d) 806, 807, par. 4; Marrett v. Herrington (Tex. Civ. App.) 145 S. W. 254, 256, par. 7; International & G. N. R. Co. v. Hall, 35 Tex. Civ. App. 545, 81 S. W. 82, 83. Defendants' complaint here under consideration being the refusal of a peremptory charge to find in their favor, it was not necessary for plaintiffs to show ownership or title to all the leases retained by them. A showing of ownership or title to any one of such leases rendered the giving of a peremptory charge improper.

 Defendants present an assignment of error in which they assert that there is an irreconcilable conflict between the finding of the jury that the value on December 13, 1931, of the leases retained by plaintiffs would have been $3 per acre if Elliott had begun the well, and the further finding that on said date said leases had no value. Said findings must be read and construed in the light of the pleadings and evidence in the case. Plaintiffs' title to the leases was defeasible, and, in event of the failure to begin drilling the well on or before said date, they

were to revert to Sandifer as trustee for the landowners. Since no well was begun, said leases on said date so reverted, and then and thereafter they were wholly without value to plaintiffs. Had Elliott begun said well and completed the drilling thereof according to the terms of his agreement, title to said leases would have fully vested in plaintiffs. The finding of the jury that said leases had a value of $3 per acre was contingent on the performance by Elliott of his agreement to begin the drilling of the well on or before such date. Said assignment is overruled.

The judgment of the trial court is affirmed.